**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PEDRO DIAZ (B46669),** | ) | |
| **Petitioner,** | ) | **Case No. 12 C 286** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **RANDY PFISTER, Warden,** | ) | |
| **Pontiac Correctional Center,** | ) | |
| **Respondent.[1]** | ) | |

**MEMORANDUM OPINION AND ORDER**

On August 16, 1997, Laura Floden met Pedro Diaz and Ernest Byrge at a bar near her

Hanover Park home. In the early morning hours of August 17, 1997, police were called to

extinguish a burning car that was later determined to belong to Floden. Police quickly

apprehended Diaz and Byrge, who admitted driving the car but claimed the fire was accidental.

Later that day, Byrge led police to a nearby construction site, where police found Floden's

lifeless body in a ditch. Following a jury trial in the Circuit Court of Cook County, Diaz was

found guilty of first degree murder, kidnapping, arson, and vehicular hijacking and was

sentenced to a 60-year term of imprisonment. Diaz's *pro se* motion for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, the petition is

denied.

---

[1]  Illinois Department of Corrections records indicate that Diaz is currently incarcerated at the Stateville Correctional Center. The current warden of that facility is Michael Lemke. Accordingly, Michael Lemke is hereby substituted as the respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts; *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004).

# I. BACKGROUND

The following facts and procedural posture relevant to Diaz's § 2254 petition are drawn from the state court record (Dkt. 14) and the Illinois Appellate Court's opinions in Diaz's direct appeal, *People v. Diaz*, No. 1-01-1925 (Ill. App. Ct. Jun. 13, 2002) (unpublished order) (Dkt. 14-1, Page ID# 63-74), and collateral appeal, *People v. Diaz*, No. 1-09-689 (Ill. App. Ct. Apr. 18, 2011) (unpublished order) (Dkt. 14-6, Page ID# 752-765). This court will presume that the state court's factual determinations are correct for the purposes of habeas review as Diaz neither contests them nor points to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

## A. Pretrial Proceedings – Diaz's Two Motions to Suppress His Confessions

The state contended that on the evening of August 16, 1997, Diaz and Byrge left a bar with Floden and severely beat her. They placed Floden in the back seat of her own car and drove her, while she was still alive, to a nearby construction site. After again beating her, they left her in a ditch and drove Floden's car to a nearby high school athletic field, where they doused it with gasoline and set it on fire. Police were called to the field to address the burning car.

At approximately 2:00 a.m. on August 17, 1997, Streamwood police officer Patrick Haskins discovered Diaz and Byrge at a nearby convenience store. Diaz was wearing only shorts and shoes, was wet and muddy, and smelled like alcohol. Officer Haskins arrested him based on an outstanding warrant.

Detective Michael Zeigler saw Diaz when he arrived at the Streamwood police station approximately one hour later. Diaz appeared to be intoxicated, screamed, and cut himself after punching a metal paper towel holder and banging his head into the light fixture. Police

transported Diaz to the hospital to treat his injuries.  Tests at 5:15 a.m. detected a blood alcohol level of .222 and the presence of cocaine metabolites.  He was released at 6:00 a.m. and returned to the Streamwood police station, where he attempted to commit suicide at some point prior to 8:00 a.m.

Diaz was then transported to the DuPage County Jail.  Its records indicate that at approximately 11:00 a.m., Diaz smelled of alcohol, laughed inappropriately, and seemed confused.  In the meantime, Byrge met separately with police and told them where he and Diaz had left Floden.  Police found her body at the location described by Byrge.

Back at the DuPage County Jail, Detective Zeigler interviewed Diaz at approximately 6:30 p.m.  He read Diaz *Miranda* warnings from a pre-printed sheet and Diaz initialed each warning and signed at the bottom of the document.  According to Zeigler, Diaz spoke with him for three hours, did not appear to be disoriented, and implicated himself in Floden's death.  At the end of the discussion, Diaz refused to write out his confession and asked for an attorney.

The following day, an investigator asked Diaz, "How are you feeling?" when Diaz was not represented by counsel.  *People v. Diaz*, No. 1-01-1925 at 2, Dkt. 14-1 at PageID# 64.  In response, Diaz began to cry and stated, "I don't know if she had any children.  She'll never see them again because I killed her."  *Id*.

Prior to trial, Diaz sought to suppress the confession he gave to Zeigler, arguing he was suffering from alcohol intoxication and withdrawal.  Drs. Albert Stipes and Haidari Shikari (psychiatrists from the Cook County Circuit Court forensic clinical services department) testified on Diaz's behalf and opined that at the time of the confession, Diaz was unable to understand and waive his *Miranda* rights because when he confessed, he was still intoxicated (Dr. Stipes) or

suffering from alcohol withdrawal (Dr. Shikari).  The State presented its own doctor, who

testified that based on the hospital's blood alcohol tests, Diaz's blood alcohol level would have

been zero at the time of the confession or, even assuming Diaz metabolized alcohol slowly,

extremely low.

The trial court rejected all of the expert testimony and found that Diaz was "alert,

coherent, and stable" when he gave his statement.  *People v. Diaz*, No. 1-01-1925 at 6, Dkt. 14-1

at PageID# 68.  It thus concluded that Diaz's waiver of his right to remain silent was voluntary

and knowing and denied the motion to suppress.  Diaz then filed a second motion to suppress the

incriminating statement he made in response to the question, "How are you feeling?"  The trial

judge denied this motion.

**B.      Jury Selection**

During jury selection prior to Diaz's trial, two potential jurors — Ida Green (an African-

American woman) and Salvador Arriaga (a Hispanic man) — were struck from the venire.

Green and Arriaga were the only minority members of the venire.  Green testified that she had

twelve children.  A daughter was a police officer, while a son had been a plaintiff in a police

brutality lawsuit three years before.  Arriaga testified that he was disabled following surgery on

his eyes due to diabetes and that even with glasses, he could not read or see very far.  He

expressed doubt about whether he could serve as a juror, explaining he could see the judge's

face, but not the faces of any of the lawyers.

After the State utilized a peremptory strike on Green, the following exchange occurred:

Defense:      We would accept [Arriaga] but I don't know about the issue with
              vision.  I mean I think there is not going to be — there is not going
              to be reading.

| | |
|---|---|
| State: | Well, it's only that he said he can't see very clear and he wouldn't be able to — |
| Defense: | We accept him. |
| State: | The main purpose of the jury is to assess the credibility of the witnesses and he said he can't see our faces sitting across the room from him. |
| Defense: | But he could see you, and the witness is closer than you are. |
| The Court: | Well, I asked him specifically if the disability would prevent him from looking at witnesses and determining credibility and looking at exhibits. |
| Defense: | I don't know what to do about that. I'm not going to make a guy — he has a lot of problems. |
| The Court: | I asked that because he had two cornea implants, he is a diabetic and had two cornea implants. If he would have said well, I can see, it might be difficult but I could see, that is another story. |
| Defense: | I understand. |
| The Court: | Otherwise he would be acceptable. |
| Defense: | My problem is the State struck the one black juror and now this is the one Hispanic juror. |
| The Court: | Are you raising a Batson issue? If you are doing so, do so. |
| Defense: | Yes. I think I have to at this point since the black woman is the only black. |
| The Court: | So you want to go back now and you want to go — |
| Defense: | I was waiting until we got through with the jury selection to make it on all of them. |
| The Court: | You are asking that Salvador Arriaga be kept on the jury after what he said? Are you saying that? |
| Defense: | Because I don't have any documents to read and I think he could see you and the witness is closer than you. |

| The Court: | Okay. I'm going — I'm not striking him for cause. |
|---|---|
| State: | You're not striking him for cause? |
| The Court: | No. |
| State: | . . . . What I think is I don't want a juror in the jury box who says he has a lot of problems and he can't catch faces. One of the main duties of a juror is to assess the credibility of witnesses . . . . Okay. We are going to strike him then. |
| The Court: | Okay. All right. I want to address your Batson issue. |
| Defense: | For the record I'm indicating that the two strikes that the state has used for alternates that are of any ethnic diversity at all out of this venire is Ida Green, the only African American juror. She is a female African American who had what I could not see was necessarily anything different than any other jurors, and then Salvadore Arriaga without any further argument. |
| The Court: | Okay. First of all, I'm reconsidering on Arriaga. I think in looking at my notes I believe that Mr. Arriaga because of his disability, having the cornea implants, his inability to see witnesses and also his inability to see the parties because he said he couldn't make out the faces sitting at the table, I think that is a bona fide reason to excuse him. So I'm going to change my ruling as to Mr. Arriaga, striking him, and it will be a judge's — I'm going to excuse him for cause because of his disability. State, counsel for the defendant, Miss Harmon, has raised an issue under Batson versus Kentucky as to juror number 34. Her name is Ida Green . . . . |
| State: | [S]he has said that her son was the victim of a police brutality, and based on the questions that the defense has asked these jurors about police procedure and following police procedure obviously something about this case would be that the police did not act properly. |
| The Court: | She also testified or stated that she has a daughter that is a police officer. |
| State: | I know she did. But once she said her son was the victim of police brutality and I know that the police are going to be alleged by the defense to have done some wrongdoing in this case, and so that's why I'm asking. You know the defendant in this case did have |

injuries. There is no allegation that the police did these injuries, but I don't want her thinking about the police brutality to her son. That was only three years ago and that was settled out of court obviously to the satisfaction of both parties, so she obviously feels there was some police brutality . . . .

The Court: First of all, I am of the belief that a pattern could be shown by even one juror. Okay. However, I do not find that the State has engaged in any pattern or purposeful pattern to striking minorities or African Americans or any other minority jurors from the venire. I do want to point out that I'm a little disappointed that Mr. Arriaga was not agreed to for cause considering what we have already struck for cause, now that I'm thinking about it. The reason I say that is I don't think anybody can seriously say in this room that Mr. Arriaga has the ability to physically serve as a juror. I do not find that there is a purposeful intent on the part of the state to exclude minorities.

Dkt. 14-14 at PageID# 2094-2099 (Ex. O-7 at H248-53).

## C.     Diaz's Trial

The case proceeded to a jury trial. The state presented evidence about Floden's death and burning car, as well as the police's discovery and arrest of Diaz and Byrge at a nearby convenience store and Diaz's use of alcohol and cocaine on the night of the murder. Detective Michael Zeigler testified about Diaz's behavior after Diaz's arrival at the Streamwood police station. Zeigler also testified about inculpatory statements made to him by Diaz. The state did not introduce Diaz's second confession, made in response to the question, "How are you feeling?"

The jury found Diaz guilty of first degree murder, kidnapping, arson, and vehicular hijacking. The trial court found that Diaz was not eligible for the death penalty and sentenced him to a 60-year term of imprisonment.

## C.     Diaz's Direct Appeal

On direct appeal, Diaz raised two arguments with the assistance of counsel:

-7-

1. The trial court erred when it denied his motions to suppress his statements to police based on expert testimony indicating that when he spoke with Officer Zeigler, he was under the influence of alcohol intoxication and was cognitively impaired; and

2. The police improperly initiated contact after he invoked his right to counsel by transferring him from the DuPage County Jail to the Hoffman Estates Police Station and prompting him to cry and make an incriminating statement after asking him, "How are you feeling?"

The Illinois Appellate Court affirmed Diaz's conviction on June 13, 2002.

Diaz then filed a *pro se* petition for leave to appeal ("PLA") to the Illinois Supreme Court arguing:

1. His trial counsel was ineffective for failing to interview witnesses who would have cast doubt on the inculpatory statements he made to Zeigler, including his admission that he was with Byrge on the night of the murder and was intoxicated;

2. His direct appeal counsel was ineffective for failing to comply with his request to raise certain issues;[2]

3. The trial court violated his constitutional rights by considering the contents of his alleged statements to police when denying his motions to suppress those statements instead of evaluating whether his statements were voluntary; and

4. The State improperly commented on his Fifth Amendment right to remain silent by arguing in closing that police found him without a shirt on, when he was the only person who could have explained why he was shirtless.

On October 2, 2002, the Illinois Supreme Court denied the PLA.

**D.  Diaz's State Post-Conviction Proceedings**

**1.  Diaz's State Post-Conviction Proceedings Before the Trial Court**

---

[2] In his PLA, Diaz states that the issues that his direct appeal counsel failed to raise are listed in an attachment. *See* Dkt. 14-2. The copy of Diaz's PLA filed with the court does not include any exhibits. The court will proceed without the missing attachment as Diaz did not allege ineffective assistance as part of his direct appeal to the Illinois Appellate Court. Thus, as discussed more fully below, any claim of ineffective assistance of counsel is procedurally defaulted.

On March 19, 2003, Diaz signed a *pro se* state post-conviction petition requesting appointment of counsel and raising the following claims:[3]

a.  His trial counsel was ineffective for failing to interview witnesses who would have cast doubt on his confession by testifying he spoke with officers for a short time on the day of his arrest and failing to present evidence showing the car fire was caused by an electrical short, not arson;

b.  Trial counsel was ineffective because she did not object to hearsay statements made by the State's witnesses;

c.  Trial counsel was ineffective because she did not adequately present his claim that jury selection violated his right to equal protection;

d.  Direct appeal counsel was ineffective based on the filing of a brief with factual errors and the refusal to include arguments Diaz requested;

e.  The trial court improperly struck vision-impaired juror Salvador Arriaga for cause and thus deprived Diaz of his right to equal protection;

f.  The State violated the Fifth Amendment by eliciting testimony that Diaz asked for an attorney after the police asked him to prepare a written summary of his confession;

g.  The trial court violated his constitutional rights by considering the contents of his alleged statements to police in denying his motions to suppress those statements instead of evaluating whether the statements were voluntary;

h.  The State's use of Byrge's hearsay statements at trial violated his rights to confront witnesses and to due process;

i.  During closing arguments, the State improperly argued that he was guilty;

j.  The State's comments about his shirt during closing arguments were not based on evidence and impermissibly highlighted the fact that he chose not to testify; and

k.  The State's comments about his intoxication on the night of the murder were unduly prejudicial.

---

[3] The court has listed the arguments in Diaz's post-conviction petition using his numbering system. It notes, however, that several of his claims overlap or are duplicative.

The trial court appointed counsel. Diaz then filed a motion for leave to supplement his original 86-page *pro se* post-conviction brief, contending appointed post-conviction counsel had neither consulted with him nor supplemented the original *pro se* petition. He attached a proposed 40-page supplement arguing:

1. He was: (a) selectively prosecuted due to his race, based on the fact that his co-defendant was not tried with him and, instead, entered into a favorable plea agreement that resulted in a twenty-five year term of imprisonment, and (b) direct appeal counsel was ineffective for failing to raise this issue;

2. His constitutional rights were violated because the two minority jurors were improperly struck, trial counsel was ineffective for agreeing to a biased jury, he was not present during jury selection, and trial and appellate counsel were ineffective because they did not object to his absence; and

3. The State utilized its peremptory challenges against minority members of the venire based on race, and trial and direct appeal counsel were ineffective for failing to raise this issue.

The State moved to dismiss the supplemental filing, contending that Illinois law prohibited Diaz from filing *pro se* motions while represented by counsel. Diaz then filed a motion seeking leave to proceed *pro se* that attached a lengthy letter from his appointed counsel expressing her disagreement with his post-conviction arguments. In addition, Diaz's counsel argued the *pro se* supplement was, in fact, properly filed because it was a successive petition, not a supplement. The trial court held that Diaz could not file a *pro se* supplement since he was represented by counsel. Diaz's counsel filed a certification stating she did not intend to amend Diaz's post-conviction petition. Dissatisfied with this response, Diaz moved to discharge his appointed counsel. The trial court denied him leave to proceed *pro se* and denied his request for post-conviction relief.

### 2. Diaz's State Post-Conviction Proceedings Before the Illinois Appellate Court

Diaz appealed with the assistance of appointed counsel, arguing:[4]

1. His case should be remanded for second-stage post-conviction proceedings[5] because appointed post-conviction trial counsel refused to amend his petition and argued that his *pro se* supplement was successive; and

2. The trial court abused its discretion when it (a) refused to allow Diaz to proceed *pro se* after his counsel refused to amend his petition and (b) did not inquire about Diaz's claim of ineffective assistance.

Diaz then again attempted to file a *pro se* supplemental brief that repeated the three arguments raised in his trial court *pro se* supplement to his state post-conviction petition and added the argument that the trial court tainted the venire when it referred to the death penalty during jury selection. On November 18, 2010, the Illinois Appellate Court issued a summary order denying leave to file a supplemental brief. It subsequently affirmed the trial court's dismissal of Diaz's post-conviction petition.

### 3. Diaz's State Post-Conviction PLA

Diaz filed a *pro se* post-conviction PLA with the Illinois Supreme Court contending:

1. The trial court violated Illinois law when it refused to consider whether he should be allowed to file a *pro se* supplement to his state post-conviction petition;

---

[4] According to the respondent, Diaz's appellate counsel raised a single issue: his direct appeal counsel was ineffective for failing to argue that the trial court erred when it denied his request to represent himself at trial. *See* Dkt. 14-5 (Resp. Ex. G). This is an overly limited reading of Diaz's filing, which contains the issues listed above.

[5] Proceedings under the Illinois Post-Conviction Hearing Act have up to three stages. "In the first stage, the petition must state the gist of a constitutional claim or it will be summarily dismissed . . . . At the second stage, the petitioner must make a substantial showing of a constitutional violation to survive dismissal. Only then will the petition advance to the third stage, an evidentiary hearing." *Davis v. Lambert*, 388 F.3d 1052, 1060 (7th Cir. 2004) (internal quotation marks omitted).

2.     His post-conviction appellate counsel was ineffective because she refused to raise issues he suggested;

3.     Trial counsel's failure to call Diaz's brother and the brother's roommate to testify that the gas can from the brother's garage was not missing rose to the level of ineffective assistance of counsel, and direct appeal counsel was similarly ineffective for not raising this issue on direct appeal;[6]

4.     The State violated his right to due process and equal protection by challenging the two minority members of the venire;

5.     Based on his race, the State selectively prosecuted him and delayed prosecution of his co-defendant;

6.     The trial court violated his constitutional rights by considering the contents of his alleged statements to police when denying his motions to suppress those statements;

7.     The State's use of Byrge's hearsay statements during trial violated his rights to confront witnesses and due process; and

8.     The State and defense counsel violated the Fifth Amendment by commenting on his invocation of his right to counsel during questioning by police.

On September 28, 2011, the Illinois Supreme Court denied the PLA.

**E.**    **Diaz's Federal Habeas Petition**

On January 13, 2012, the court received Diaz's federal habeas petition, which was dated

November 28, 2011. In his petition, Diaz argues:

1.     The State improperly used its peremptory challenges to exclude the two minority members of the venire, and direct appeal counsel was ineffective for failing to raise this issue on appeal;

2.     Trial counsel was ineffective for: (a) failing to present evidence from an arson investigator showing that the car fire was caused by an electrical short, not arson, and (b) failing to present witnesses to testify that his interview with the police

---

[6] Diaz appears to be contending that testimony about the gas can would have established that Floden's car caught fire as a result of an electrical issue instead of arson caused by dousing her car with gasoline and setting it alight.

took significantly less than three hours so he could not have confessed as they claimed;

3.     The trial court violated his due process rights by considering the content of his alleged statements to police when denying his motions to suppress those statements instead of evaluating whether the statements were voluntary;

4.     The State violated the Fifth Amendment by commenting on his invocation of his right to counsel during police questioning;

5.     The State selectively prosecuted him and sought the death penalty due to his race but delayed prosecuting his Caucasian co-defendant;

6.     Direct appeal counsel was ineffective for failing to raise unspecified issues and misstating unspecified facts;[7] and

7.     The State's use of hearsay statements from his non-testifying co-defendant prevented him from receiving a fair trial.

## II. DISCUSSION

Diaz's § 2254 petition turns on the complex and difficult procedural rules that the court must apply in federal habeas corpus proceedings.  For the following reasons, Claim 2 (ineffective assistance of trial counsel), Claim 3 (due process violation based on the denial of the first motion to suppress), Claim 6 (ineffective assistance of direct appeal counsel), and Claim 7 (the State's use of Byrge's statements during trial) are procedurally defaulted because Diaz did

---

[7] Construing Diaz's § 2254 petition broadly, Claim 6 appears to challenge the performance of post-conviction appellate counsel.  However, in his reply, Diaz repeatedly and clearly criticizes the performance of direct appeal counsel and ends these sections with "See Claim 6." Dkt. 26 at PageID# 2831-82, 2834, 2837, 2840, 2842, 2844 (Reply at 3-4, 6, 9, 12, 14, 16).  It is improper to raise an argument for the first time in a reply memorandum as a § 2254 petition must "specify all the grounds for relief available to the petitioner." *See Mayle v. Felix*, 545 U.S. 644, 655–56 (2005) (quoting Rule 2(c) of the Rules Governing Section 2254 Cases).  Nevertheless, given Diaz's *pro se* status, the court will construe Claim 6 as a challenge to direct appeal counsel's performance.  This means it must disregard the respondent's arguments about Claim 6, as the rules governing federal habeas review of claims of ineffective assistance of direct and post-conviction appellate counsel are different.

-13-

not present them in one full round of state court proceedings, and none of the exceptions to procedural default are applicable. To the extent Claim 1 (the striking of the two minority jurors in the venire), Claim 4 (State's comments on Diaz's invocation of his right to counsel during questioning), and Claim 5 (selective prosecution) are neither procedurally defaulted nor barred by the independent and adequate state ground doctrine, those claims fail on the merits.

**A.      Procedural Default**

**1.      The One Full Round of State Court Review Doctrine (Claims 2, 3, 6 and 7)**

The doctrine of procedural default requires a federal habeas petitioner to present his claims to all three levels of the Illinois courts (the trial court, the Illinois Appellate Court, and the Illinois Supreme Court) to preserve those claims for federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). Thus, the court must determine if the claims listed in Diaz's federal habeas petition were raised Diaz's trial court level post-conviction petition, his intermediate appellate court brief filed with the Illinois Appellate Court, and his PLA filed with the Illinois Supreme Court. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means it is procedurally barred); *O'Sullivan*, 526 U.S. at 844 (failure to present claim to state's highest court means it is procedurally barred).

**a.      Claim 2**

As noted above, in Claim 2 Diaz argued that his trial counsel was ineffective based on: (a) the failure to present evidence from an arson investigator to show the car fire was caused by an electrical problem; and (b) the failure of witnesses to testify that he could not have confessed as claimed by the police because his interview with them took significantly less than three hours. Reading Diaz's *pro se* state court filings broadly, to the extent that Claim 2 appears in Diaz's

direct appeal, it is only included in his direct PLA. He appears to have included Claim 2 in his trial court post-conviction petition. However, he did not include it in his post-conviction appeal filed with the Illinois Appellate Court or his post-conviction PLA filed with the Illinois Supreme Court. Thus, Claim 2 is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 844-45.

### b. Claims 3 and 7

Claim 3 (due process violation based on the denial of the first motion to suppress) and Claim 7 (the State's use of Byrge's statements during trial) both appear in Diaz's trial court post-conviction petition and post-conviction PLA filed with the Illinois Supreme Court. However, neither of these claims appears in Diaz's Illinois Appellate Court filings. These claims are, therefore, also procedurally defaulted. *See Castille*, 489 U.S. at 349.

### c. Claim 6

Finally, the court considers Claim 6 (ineffective assistance of direct appeal counsel). Diaz appears to have challenged various aspects of the performance of his direct appeal counsel (Claim 6) in his *pro se* trial court post-conviction petition, the proposed *pro se* supplement to that petition (which the trial court did not allow him to file), and the proposed *pro se* supplement to his appellate brief (which the trial court did not allow him to file). However, the only mention of ineffective assistance of direct appeal counsel in Diaz's PLA is his contention that his direct appeal counsel was ineffective for failing to challenge trial counsel's decision not to call Diaz's brother and the brother's roommate to testify that the gas can from the brother's garage was not missing. This argument does not match up with the ineffective assistance of direct appeal counsel claim in Diaz's § 2254 petition. Thus, Claim 6 is procedurally defaulted.

### 2. Exceptions to Procedural Default

There are two exceptions to procedural default that, if met, allow a federal habeas court to reach the merits of a defaulted claim. First, the "cause and prejudice" exception applies if a petitioner identifies an "objective factor external to the defense [that] impeded [his] efforts to comply with the State's procedural rule" and demonstrates actual prejudice resulting from the alleged violation of federal law. *Strickler v. Greene*, 527 U.S. 263, 282 n.24 (1999). Alternatively, a petitioner can avoid default using the "fundamental miscarriage of justice" exception, which applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995).

As discussed above, Diaz procedurally defaulted Claims 2, 3, 6, and 7. To recap, Diaz asserts that his trial counsel was ineffective because he failed to: (1) present evidence from an arson investigator to show the car fire was caused by an electrical problem (Claim 2(a)) or present witnesses to testify that he could not have confessed because his interview with the police took significantly less time than the three hours claimed by police (Claim 2 (b)); (2) contend that the denial of the first motion to suppress violated his right to due process (Claim 3); and (3) challenge the State's use of alleged hearsay statements by Byrge during trial (Claim 7). In Claim 6, Diaz argues that his direct appeal counsel was ineffective for failing to raise unspecified issues and misstating unspecified facts.

### a.       Cause and Prejudice:  Ineffective Assistance of Counsel

Diaz blames his default of Claims 2, 3, and 7 (all ineffective assistance of trial counsel claims) on his appointed attorneys in his direct and post-conviction state court proceedings, as they did not raise these claims in all levels of his state court proceedings.  A habeas petitioner may use ineffective assistance of counsel as cause ("IAOC as Cause") to excuse the default of an underlying ineffective assistance of counsel claim ("Underlying IAOC claim") only if he preserved his IAOC as Cause claim by presenting it through one complete round of state court review.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000).

The court thus must determine if Diaz preserved any IAOC as Cause claims based on Underlying IAOC claims 2, 3, 6, and 7.  The court has studied the extensive list of state court arguments summarized above.  While Diaz presented numerous arguments to the state courts during his direct and post-conviction proceedings, he did not raise any IAOC as Cause claims.  Thus, he cannot establish cause for the default of Claims 2, 3, 6, and 7 based on the alleged ineffectiveness of his state court counsel.

Diaz does not argue that the lack of counsel or ineffective counsel in his state post-conviction proceedings is cause that excuses his default of Claims 2, 3, 6, and 7.  Because he is proceeding *pro se*, the court will nevertheless consider if his position is bolstered by two recent Supreme Court cases:  *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, — U.S. —, 133 S. Ct. 1911 (2013).  These cases establish limited circumstances where a petitioner who files a *pro se* state post-conviction petition can establish cause that excuses the default of ineffective assistance of trial counsel claims.

Under *Martinez*, cause may excuse a default if: "(1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino*, 133 S. Ct. at 1918 (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21). *Trevino* clarified the fourth *Martinez* requirement by holding that if state law allows a defendant to present an ineffective assistance of trial counsel claim on direct appeal but that law "— as a matter of its structure, design, and operation — does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal," then the *Martinez* exception applies even if a defendant could have attempted to challenge trial counsel's effectiveness on direct appeal. *Id*. at 1921.

In Illinois, collateral proceedings are not the first opportunity to raise an ineffective assistance of counsel claim. *See People v. Miller*, 988 N.E.2d 1051, 1062 (Ill. App. Ct. 2013) (citing *People v. Banks*, 237 Ill.2d 154 (Ill. 2010)). Thus, *Martinez* is inapplicable to federal habeas corpus petitions filed by Illinois prisoners. *See Murphy v. Atchison*, No. 12 C 3106, 2013 WL 4495652, at *21-22 (N.D. Ill. Aug. 19, 2013) (collecting cases). This court recently held that:

> [w]ith respect to *Trevino*, "[u]nder Illinois law a petitioner can adequately develop the factual record supporting his ineffective assistance of counsel claim prior to his direct appeal by filing post-trial motions pursuant to the Illinois Supreme Court's decision in *People v. Krankel*, 102 Ill.2d 181 (Ill. 1984) (holding that a defendant is entitled to new counsel to represent him on post-trial motions alleging ineffective assistance of trial counsel)." *Butler* [*v. Hardy*, No. 11 C 4840,] 2012 WL 3643924, at *3 [(N.D. Ill. Aug. 22, 2012)]. In contrast, *Trevino* turned on Texas law, under which it is "virtually impossible for appellate counsel

to adequately present an ineffective assistance [of trial counsel] claim" on direct review. *Trevino*, 133 S. Ct. at 1918 (quoting *Robinson v. State*, 16 S.W.3d 808, 810-11 (Tex. Crim. App. 2000)). Because of this critical difference between Illinois and Texas law, *Trevino* does not apply to this case, as [the petitioner] had a meaningful chance to raise an ineffective assistance of trial counsel claim in his direct proceedings, had he chosen to do so. *See id.* at 1921.

*Id.* at *22. Thus, neither *Martinez* nor *Trevino* constitute cause that excuses Diaz's procedural default of his ineffective assistance of trial counsel claims. Because Diaz cannot establish cause for any of his defaulted claims, the court will not address prejudice. *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010).

In the interests of completeness, the court also notes that "*Martinez* does not apply to procedural defaults based on omissions during the [post-conviction] appellate process." *United States ex rel. Fleming v. Chandler*, No. 12 C 5190, 2013 WL 589559, at *5 (N.D. Ill. Feb. 14, 2013). Diaz included Claims 3, 6, and 7 in his post-conviction petition filed with the trial court but omitted these claims at the appellate court stage (either before the Illinois Appellate Court or the Illinois Supreme Court). *Martinez* and *Trevino* are, therefore, inapplicable because he did not default these claims due to the lack of counsel during his initial-review collateral proceedings. *See id.*

### b.     Cause and Prejudice: Second Level

As detailed above, Diaz cannot use IAOC as Cause to excuse the default of underlying IAOC claims 2, 3, 6, and 7 because he defaulted his IAOC as Cause claims. As with Diaz's other defaulted claims, however, he may avoid this result if he can show cause for the default of the IAOC as Cause claims. Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler,* 527 U.S. at 282 n.24. The record does not show that an objective factor prevented Diaz from

-19-

preserving his IAOC claims and for the reasons discussed above, neither *Martinez* nor *Trevino* affect this result.

Moreover, the complexity of the analysis in this case does not establish cause. *See Edwards*, 529 U.S. at 454-58 (Breyer, J., concurring) (criticizing "the complexity of th[e] Court's habeas corpus jurisprudence — a complexity that in practice can deny the fundamental constitutional protection that habeas corpus seeks to assure" and noting that "few lawyers, let alone unrepresented state prisoners, will readily understand" the majority's holding about cause). Thus, cause does not excuse Diaz's default of his ineffective assistance of counsel claims. This means that the court need not address prejudice. *Promotor*, 628 F.3d at 887.

### d. Fundamental Miscarriage of Justice

The court next considers the fundamental miscarriage of justice exception, which applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger*, 301 F.3d at 767, *citing Schlup*, 513 U.S. at 327. To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id*.

According to Diaz, he is innocent because unspecified guards at the DuPage County Jail, if called to testify, would have stated he did not confess. Diaz also argues that although the jail responded to a subpoena issued by Diaz's counsel by stating it did not have video surveillance of Diaz, Diaz's brother believed videotapes from the jail existed that would show that Diaz did not confess. To avoid procedural default based on actual innocence, Diaz must show "that it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence." *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001) (quoting *Schlup*, 513 U.S. at 327). Diaz has

not met this standard as his general assertions about evidence that allegedly demonstrates his innocence are not based on the kind of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that may be used to demonstrate actual innocence. *Schlup*, 513 U.S. at 324.

Diaz's claim that no credible evidence presented at trial linked him to Floden's death fares no better. A claim of actual innocence based on a challenge to the credibility of witnesses who testified at trial is insufficient to establish a fundamental miscarriage of justice. *See Araujo v. Chandler*, 435 F.3d 678, 681-82 (7th Cir. 2005). Thus, Diaz's opinions about the credibility of the State's witnesses do not establish he is actually innocent of the crime of which he was convicted. Thus, Diaz cannot use the miscarriage of justice exception to revive his defaulted claims. Accordingly, Diaz is not entitled to habeas relief as to Claims 2, 3, 6, and 7 as these claims are procedurally barred and none of the exceptions to procedural default apply.

### B. Independent and Adequate State Ground (Claims 1, 4, and 5)

The court next turns to Claim 1 (the striking of the two minority jurors in the venire), Claim 4 (the State's comments on Diaz's invocation of his right to counsel during questioning by the police), and Claim 5 (selective prosecution). The respondent contends that these claims are barred by the independent and adequate state ground doctrine. Under this doctrine, the court may not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *superseded by statute on other grounds*, 28 U.S.C. § 2254(b)(2). A state law ground is independent when "the state court actually relied on a state rule sufficient to justify its decision" and is adequate when the state

court applies the rule "in a consistent and principled way."  *Prihoda v. McCaughtry*, 910 F.2d

1379, 1382-83 (7th Cir. 1990).  For the following reasons, to the extent Claims 1, 4, and 5 are

not barred by the independent and adequate state ground doctrine, these claims fail on the merits.

> **1.      Is the State Rule Against Hybrid Representation Independent and
>               Adequate?**

Diaz attempted to raise Claims 1, 4, and 5 in supplemental *pro se* pleadings filed with the

the trial court and the Illinois Appellate Court.  Those courts refused to allow Diaz to file his

proposed supplemental *pro se* pleadings because he was represented by appointed counsel.  In

affirming the denial of leave to file the *pro se* supplemental petition at the trial court level, the

Illinois Appellate Court held:

> [A] defendant represented by counsel has no authority to file *pro se* materials,
> unless those materials challenge counsel's effectiveness.  *See People v. Rucker*,
> 346 Ill. App. 3d 873, 882 (2004).  Thus, if the defendant's *pro se* submission was
> actually a supplemental petition submitted to the court while his counsel was
> appointed, it was not properly filed and could not have been considered.

*People v. Diaz*, No. 1-09-689 at 5-6 (Dkt. 14-6, Page ID# 756-757).  In turn, when the Illinois

Appellate Court rejected Diaz's attempt to file a *pro se* supplemental appellate brief, it did not

provide any reasons.  However, based on the court's study of the record, it appears that the

Illinois Appellate Court rejected the *pro se* brief because Diaz was represented by counsel.

Generally, a state procedural rule barring hybrid representation (the filing of briefs by

both counsel and a party) is an adequate and independent state law ground that bars a federal

habeas court from considering issues raised in a rejected *pro se* filing.  *See, e.g.*, *United States ex*

*rel. Galvez v. Hardy*, No. 11 C 6994, 2012 WL 588809, at *3 (N.D. Ill. Feb. 22, 2012) (the

Illinois rule that "a defendant does not have the right to both self representation and the

assistance of counsel" is "firmly established and regularly followed" so the state court's rejection

of a *pro se* supplemental brief rested on an independent and adequate state ground); *United States ex rel. Cumbee v. Hardy*, No. 11 C 50118, 2012 WL 138647, at *2 (N.D. Ill. Jan. 18, 2012) (the Illinois Appellate Court's denial of a motion to file a *pro se* supplemental brief "is an independent and adequate state procedural ground for rejecting petitioner's *pro se* supplemental brief and the claims included therein."); *Dolis v. Gilson*, 07 C 1816, 2009 WL 5166228, at *8 (N.D. Ill. Dec. 23, 2009) (the state court's reliance on the "clearly established state procedural rule" prohibiting hybrid representation was an independent and adequate state ground).

The state courts here relied on the state procedural rule against hybrid representation when rejecting Diaz's *pro se* supplemental filings and did not reach the merits of those claims in the alternative. Thus, the independent and adequate state ground doctrine appears to bar Claims 1, 4, and 5. However, one of this court's colleagues has questioned whether Illinois' rule against hybrid representation is in fact adequate because "the Illinois reports are replete with decisions in non-capital cases in which courts permitted defendants to file supplemental *pro se* briefs, without suggesting that this was the least bit out of the ordinary." *United States ex rel. Parker v. Chandler*, No. 09 C 4231, 2011 WL 221834, at *7-8 (N.D. Ill. Jan. 24, 2011) (collecting cases). As noted above, a state procedural rule is adequate only if the state court applies that rule "in a consistent and principled way." *Prihoda*, 910 F.2d at 1383. The court need not resolve the split in authority in this district regarding the adequacy of Illinois' rule barring hybrid representation as Claims 1, 4, and 5 fail on the merits.

      **2.**      **The Merits of Claims 1, 4, and 5**

            **a.**      **Striking of the Two Minority Venirepersons (Claim 1)**

In Claim 1, Diaz challenges the striking of the two minority jurors in the venire. The exclusion of even a single member of the venire based on race violates a defendant's right to equal protection. *See, e.g.*, *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). The Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), governs equal protection challenges based on juror strikes. Under *Batson*, "[f]irst, the defendant must make a prima facie case of race discrimination in selection of the venire. Second, the government must offer a race-neutral explanation for the peremptory strike. Third, the court must determine whether the defendant has carried his burden of proving that the government's stated reason is a pretext for discrimination." *United States v. Yarrington*, 640 F.3d 772, 778 (7th Cir. 2011).

The *Batson* inquiry is inapplicable to vision-impaired potential juror Salvador Arriaga as the trial court ultimately struck him for cause due to his inability to see the witnesses and evaluate their credibility. This decision is eminently reasonable given the uncontradicted evidence in the record about his inability to see counsels' faces clearly and his significant vision issues.

With respect to Ida Green, defense counsel objected to the State's use of a peremptory challenge as Green was the only African-American member of the venire. In response, the State pointed to a race-neutral explanation: the potential for her son's prior police brutality case to be distracting given the defense theory that the police wrongfully questioned Diaz and the fact that Diaz injured himself while in custody.[8] The defense did not suggest any reasons why the State's

---

[8] In his reply in support of his § 2254 petition, Diaz asserts that Green never said her son was the victim of police brutality and posits he may have merely been a witness in a civil rights case. Dkt 26 at PageID# 2833 (Reply at 5). This argument is belied by the record, as during jury selection, Green testified her son was a plaintiff in a police brutality lawsuit.

explanation was not credible. The trial court's conclusion that the State's explanation was not a pretext for discrimination was reasonable as the explanation was plausible, and defense counsel neither challenged it nor disputed that Green was the only juror with a connection to prior police misconduct litigation. *See Miller–El v. Cockrell*, 537 U.S. 322, 338-39 (2003) ("the critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike . . . . Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy."); *Harris v. Hardy*, 680 F.3d 942, 954-965 (7th Cir. 2012) (evaluating a *Batson* claim raised in a § 2254 petition by considering all circumstances surrounding the use of peremptory challenges); *Tinner v. United Ins. Co. of America*, 308 F.3d 697, 706 (7th Cir. 2002) (in a discrimination case, asking an African-American venire member if he is connected to someone who filed a discrimination lawsuit is not, by itself, proof of race-based discrimination). Thus, Diaz's *Batson* claims based on Green and Arriaga are unavailing.

### b.  Mention of Diaz's Request for Counsel (Claim 4)

At trial, the State presented evidence that when Detective Zeigler asked Diaz to reduce his oral confession to writing, Diaz asked for counsel. During cross-examination, Detective Zeigler testified that Diaz refused to write out his confession following his oral confession. Defense counsel then asked Detective Zeigler if Diaz responded by asking for a lawyer and Detective Zeigler answered in the affirmative. The State confirmed this on re-direct and defense counsel re-confirmed on re-cross examination. Similarly, during his direct examination, Officer Wanic testified that when Diaz was asked if he would give a written statement, he refused and

asked for a lawyer.  During cross-examination, defense counsel asked Officer Wanic if Diaz had invoked his right to counsel, and Officer Wanic answered in the affirmative.

In addition, during closing arguments, defense counsel asserted the police had invented Diaz's confession and repeatedly noted that Diaz had invoked his right to counsel.  In response, the State stated that after Diaz asked for an attorney, the police stopped questioning him.  Dkt. 14-16, at PageID# 2638-39 (Ex. O-9 at J115-16) ("Once a defendant says, I want a lawyer, all questioning stops . . . . [Police] went and said, all right, you want to give a handwritten statement?  And he said, no.  That's his right.  He can say no.  He controls this.  He can say no, it's his Constitutional right.  And he said, I'm tired and I want a lawyer.  Well, once he said that, they can't say, Well, get some sleep; we'll come back in an hour and try to get the handwritten statement then.  They can't say that.  He said he wants a lawyer, it's over . . . . It's his right, and his decision.").

In his § 2254 petition, Diaz argues that the State's references to his invocation of his right to counsel violated the Fifth Amendment.  The court disagrees as the State's questions to the police witnesses and its closing arguments do not rise to the level of improper commentary on Diaz's invocation of his right to counsel.  In the face of an alleged oral confession, defense counsel understandably attempted to cast doubt on the police officers' testimony about that oral confession and the lack of a written confession.  In response to the defense's theory of the case, the State was entitled to elicit testimony explaining the lack of a written confession in a way as long as it did not imply that Diaz's invocation of his right to counsel meant he was guilty.  *See Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986) (the prosecutors' closing argument "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such

as the right to counsel or the right to remain silent" and much of the "content was invited by or was responsive to the opening summation of the defense"); *United States v. Aldaco*, 201 F.3d 979, 988-89 (7th Cir. 2000) (prosecutor could respond to defense counsel's arguments about the lack of certain testimony in closing if he clearly advised the jury that the government had the burden of proof). Because the challenged comments were appropriate, the court's inquiry ends. *See Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005) (if the prosecutor's comments were proper, the court need not consider whether they prejudiced the defendant). The State's references to Diaz's invocation of his constitutional right to counsel thus cannot be reasonably interpreted as an attempt to imply guilt. Thus, Diaz is not entitled to relief on this claim.

### c.  Selective Prosecution (Claim 5)

Diaz's selective prosecution claim appears to be based on the fact that he is Hispanic while Byrge, his co-defendant who pleaded guilty following Diaz's trial, is Caucasian. In his habeas petition, Diaz focuses on the timing of Byrge's plea and the State's contention that he and Byrge acted in concert in connection with Floden's death. He argues that the fact that the State did not try Byrge with him means that his public defender, the prosecutor, and the judge conspired to try him alone based on his race and shows that the prosecutor sought the death penalty based on his race. *See* Dkt. 14-6, at PageID# 743 (Ex. J at 14) (proposed *pro se* supplemental post-conviction appellate brief). He also argued that he and Byrge should have been tried together, so his trial counsel was ineffective for failing to object to this "selective and/or discriminatory prosecution." *Id*. at PageID# 745 (Ex. J at 16).

Under the Equal Protection Clause, a prosecutor may not charge a defendant with a crime based on the defendant's race. *Vasquez v. Hillery*, 474 U.S. 254, 264  (1986). To prevail on his

selective prosecution equal protection claim, Diaz must show that the State singled him out for prosecution "where others were not and that the selection was based on an impermissible ground, such as race or religion." *United States v. Fletcher*, 634 F.3d 395, 406-07 (7th Cir. 2011). Diaz's selective prosecution claim is facially deficient as it is conclusory and rests simply on the fact that he is Hispanic while Byrge is Caucasian. *See United States v. Finley*, 705 F. Supp. 1297, 1302 (N.D. Ill. 1988) (a "conclusory allegation [about the decision to indict and try the defendant] is insufficient to raise a colorable claim of selective prosecution").

Moreover, the State unquestionably prosecuted both Diaz and Byrge following Floden's death. Thus, Diaz's claim is actually a complaint that the State did not try the two co-defendants together. The court will not address whether Diaz properly preserved this claim or whether a challenge to the State's litigation strategy arises under federal law as, in any event, Diaz's selective prosecution claim is unavailing. Diaz exercised his constitutional right to put the State to its proof by going to trial. However, he has never disputed that immediately following Floden's death, Byrge confessed, led police to Floden's body, and agreed to cooperate. Moreover, Byrge ultimately pleaded guilty. Diaz thus cannot establish that Byrge was similarly situated but received more favorable treatment. *See United States v. Armstrong*, 517 U.S. 456, 468–69 (1996) (to obtain discovery in support of a selective prosecution claim, a criminal defendant must first must show that similarly situated individuals were not prosecuted); *Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007) (rejecting selective prosecution claim based on more lenient prosecutorial treatment of a co-defendant who exhibited remorse and was cooperative); *Lee v. Paquin*, No. 08-CV-697-BBC, 2009 WL 331826, at *1 (W.D. Wis. Feb. 5, 2009) (rejecting selective prosecution claim based on the defendant's claim that he was less

culpable than a co-defendant where no evidence suggested he was prosecuted due to his race, religion, or the desire to penalize the exercise of constitutional rights).  Diaz's selective prosecution claim, therefore, is meritless.

## III.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated in this order, the court finds that Diaz has not made a substantial showing of the denial of a constitutional right as he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional rights

that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue a certificate of appealability.

**IV.    Conclusion**

For the above reasons, Pedro Diaz's request for a writ of habeas corpus under 28 U.S.C. § 2254 is denied. The court declines to certify any issues for appeal under 28 U.S.C. § 2253(c). The clerk is directed to substitute Michael Lemke, warden of the Stateville Correctional Center, as the respondent and enter a Rule 58 judgment terminating this case.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 4, 2013